**Elizabeth G. RUSSELL, et al., Appellants,**

v.

**DEPARTMENT OF THE AIR FORCE.**

**No. 81–2005.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 18, 1982.

Decided July 23, 1982.

---

Peter V. Berns, Washington, D. C., with whom Laura Macklin and Lewis Milford, Washington, D. C., were on the brief, for appellants.

Scott T. Kragie, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty. at the time the brief was filed, Royce C. Lamberth, Kenneth M. Raisler and Michael J. Ryan, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before ROBB and BORK, Circuit Judges, and GORDON,* Senior District Judge for the Western District of Kentucky.

JAMES F. GORDON, Senior District Judge:

This appeal concerns Exemption (b)(5) of the Freedom of Information Act (hereinafter, FOIA), 5 U.S.C. § 552(b)(5). Appellants, Elizabeth B. Russell and the National Veteran Task Force on Agent Orange, brought this action under the FOIA to force Appellee, Department of the Air Force, to disclose portions of a draft Air Force historical document entitled "Operation Ranchhand: The United States Air Force and Herbicides in Southeast Asia, 1961–1971." Appellants appeal from the District Court's award of summary judgment to the Air Force, which held that the portions of the draft document withheld are within Exemption (b)(5). We affirm.

The Appellant's cause of action focuses on an official Air Force interpretive history on the use of Agent Orange and other herbicides in the Vietnam War. The Air Force has submitted the final manuscript of this history to the Government Printing Office for publication, and has already disclosed the entire final manuscript to the Appellants. The Appellants, however, seek portions of a preliminary draft of the history. This draft manuscript contains 1,168 pages. The Air Force has disclosed to the Appel-

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

lants all but about twenty pages, which were not included in the final manuscript. Through this action, Appellants seek to obtain the twenty pages withheld.

Appellant Russell is a college student. At the time she requested the "Ranchhand" material, she was preparing an honors thesis that addressed the use of herbicides in the Vietnam War. Appellant National Veterans Task Force on Agent Orange (hereinafter, Task Force), on the other hand, is a national organization established to advance the interest of veterans who were exposed to the herbicide Agent Orange while serving in Vietnam. In its brief, the Task Force states that it "seeks to disseminate information and influence government policy concerning the health hazards and consequences of herbicide use". In order to accomplish its purposes, the Task Force, among other things, testifies before Congress, files litigation, and distributes information via the mass media.

The material sought by Appellants is the product of an interpretive, historical study conducted by the Office of Air Force History (hereinafter, OAFH). According to the Chief of OAFH, such studies are "designed to do more than preserve history." "The primary considerations are that the products have utility for direct mission support purposes and serves as guides for Air Force action, that they be of current and future value to the Air Force in planning and decision making, and that they be a source of essential and accurate information."

In order to produce works that fulfill the above purposes, OAFH maintains a complex system of editorial review. Once the OAFH assigns an individual officer to write a history, the officer begins work on an initial draft from his research of primary sources of information. As the work progresses, each chapter is reviewed by a panel of other OAFH historians and critiqued by the senior officer supervising the project. The panel submits oral and written comments to the "author" concerning both the substance and style of the material in the draft. If appropriate, these comments are incorporated in the draft chapter.

Once a total draft manuscript is completed, senior OAFH officers review the proposed history. The manuscript is then circulated among various agencies within the Air Force which have knowledge concerning the subject of the history. These agencies review the accuracy and security status of the material in the manuscript. After the relevant agencies have evaluated the draft, the "author" makes whatever changes are shown necessary by this review. Once this process is complete, the manuscript is forwarded to the Secretary of the Air Force, Public Affairs (hereinafter, Public Affairs). Public Affairs subjects the manuscript to a security classification and policy review to determine the appropriateness on the history for open publication. In making this evaluation, Public Affairs may work with the Defense Department, the State Department, or the Central Intelligence Agency. If Public Affairs approves the contents of the history, the manuscript returns to the OAFH for final editorial review and final approval by the Chief of OAFH. If the Chief approves the final manuscript for publication, it is sent to the Government Printing Office.

As noted above, the Air Force has already disclosed to the Appellants the final manuscript of the "Ranchhand" history. If Appellants' suit sought disclosure of this official Air Force statement of historical facts a different case would be before us. *See, Playboy Enterprises, Inc. v. Department of Justice, et al.,* 677 F.2d 931 (D.C.Cir.1982). Since, however, Appellants seek to probe behind the official Air Force history to obtain a preliminary draft of the official document, we believe disclosure would reveal the Air Force's deliberative process in creating the "Ranchhand" history. Accordingly, the District Court correctly found that Exemption (b)(5) exempts the portions of the draft manuscript withheld from mandatory disclosure under the FOIA.

Exemption (b)(5) shields from the mandatory disclosure requirements of the FOIA the deliberative process that precedes most decisions of government agencies. *Jordan v. United States Dept. of Justice,*

591 F.2d 753, 773 (D.C.Cir.1978). Thus, the exemption protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency. *Montrose Chemical Corp. of California v. Train*, 491 F.2d 63 (D.C. Cir. 1974). For example, agency communications containing purely factual material are generally not protected by Exemption (b)(5). *EPA v. Mink*, 410 U.S. 73, 90–1, 93 S.Ct. 827, 837, 35 L.Ed.2d 119 (1972). Where, however, disclosure of even purely factual material would reveal an agency's decision-making process Exemption (b)(5) applies. *Mead Data Central, Inc. v. U. S. Department of the Air Force*, 566 F.2d 242, 256 (D.C.Cir.1977). In *Jordan*, Judge Wilkey articulates well the policies behind Exemption (b)(5)'s protection of the deliberative process. He states:

> There are essentially three policy bases for this privilege. First, it protects creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy decisions. Second, it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon. And third, it protects the integrity of the decision-making process itself by confirming that "officials should be judged by what they decided(,) not for matters they considered before making up their minds."

591 F.2d at 772–3 (footnotes omitted). When we consider the facts of this case in light of the above policies, we are convinced that the disclosure sought by Appellants would reveal the type of deliberative process that Exemption (b)(5) was designed to protect.

The "Ranchhand" history, which emerged from the OAFH's editorial review process, constitutes the Air Force's official statement concerning the history of herbicide use in the Vietnam conflict. The Air Force depends on this official statement to provide a basis for future military and public

policy decisions. It must stand by its history in the public forum, and, in light of the possibility of Agent Orange disability litigation brought by Vietnam veterans, perhaps in the judicial forum as well. Thus, the Air Force has much at stake in the "Ranchhand" history, and documents like it, being the product of "creative debate and candid consideration of the alternatives" within the Air Force and other government agencies it consults. Failure to apply the protections of Exemption (b)(5) to the OAFH editorial review process would effectively make such discussion impossible. We believe, as the Air Force maintains, that individual authors assigned to draft interpretive histories of complex and controversial events should be encouraged to provide the best, most honest, and scholarly products they are capable of producing. The OAFH historians are aware that a long and arduous review will be given to their work products, and that other historians and policy makers may not agree with their interpretations. If the authors are put on notice, however, that each and every difference of opinion will be revealed to the public, with possible adverse consequences to the Air Force, they will be less inclined to state their own interpretations candidly where they perceive the possibility of differences from the opinions held by the reviewing authorities. Stated otherwise, they will be more inclined to draft what they perceive the "official line" to be.

We also believe that disclosure of the withheld pages of the draft manuscript could lead to confusion of the public. Exemption (b)(5) is designed to guard against disclosure of documents that suggest "as agency position that which is as yet only personal position." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980). As the District Court observed below, the Air Force takes no position on the history of herbicide use *in the draft manuscript*. Rather, the draft "represents one Air Force historian's view of the 'facts' ". Only after the manuscript completed the OAFH review process did it

reflect the official Air Force view.[1] We do not assume that Appellants or anyone else would deliberately mislead the public. Nevertheless, we recognize the tendency of the public to assume that a memorandum generated within an agency of the government reflects the position of 'the agency, regardless of whether the memorandum is designated as an "official" document. Therefore, Exemption (b)(5) acts in this case to prevent the public from misconstruing the views of an individual Air Force officer to be the views of the Air Force.

Finally, disclosure of the material sought by Appellants would violate the integrity of the decision-making process whereby Senior Air Force officials determined the content of the official "Ranchhand" history. Appellants seek pages from the draft manuscript that were edited out of the final history. Our *in camera* examination of the twenty pages withheld from Appellants confirms that a simple comparison between the pages sought and the official document would reveal what material supplied by subordinates senior officials judged appropriate for the history and what material they judged inappropriate. Exemption (b)(5) exists to prevent such disrobing of an agency decision-maker's judgment. As Judge Friendly wrote in *Lead Industries Ass'n v. Occupational Safety and Health Admin.*, 610 F.2d 70, 85–6 (2d Cir. 1979):

> The court also ordered disclosure of segments from 14 documents, . . . , which

can be considered drafts of the preamble to the standards that appeared in the Federal Register, . . . . It was improper to compel disclosure of these segments . . . . If the segment appeared in the final version, it is already on the public record and need not be disclosed. If the segment did not appear in the final version, its omission reveals an agency deliberative process: for some reason, the agency decided not to rely on that fact or argument after having been invited to do so. It might indeed facilitate LIA's [the plaintiff] attack on the standards if it could know in just what respects the Assistant Secretary departed from the staff reports had before her. But such disclosure of the internal workings of the agency is exactly what the law forbids.

In summary, we believe disclosure of the material sought by the Appellants would reveal the Air Force's deliberative process in creating the official "Ranchhand" history. The policies embodied in Exemption (b)(5) are as applicable to the OAFH editorial review process as they are to other agency deliberations that precede agency decisions.[2] Therefore, Exemption (b)(5) prevents the mandatory disclosure under the FOIA of the approximately twenty pages of the "Ranchhand" preliminary draft withheld by the Air Force.[3] The District Court's award of summary judgment to the Air Force is

*Affirmed.*

---

1. Appellants' argument that the draft report is somehow *post* decisional because historical is faulty. The OAFH historical studies are clearly intended for future use in Air Force decision-making, and there is nothing to suggest the "Ranchhand" document will not be so used. Appellants argue that without a specific and concrete agency decision to which the *report* can relate, the privilege does not apply. The final "Ranchhand" report may indeed be antecedent to future Air Force decisions concerning herbicides, but that is not at issue. The *report* was made public; certain draft portions of the report were withheld. The report itself is the agency action or decision. Thus, the draft document is indisputably pre-decisional.

2. Appellants argue that the deliberative process privilege is intended to protect decisionmaking concerning legal or policy matters in the context of an agency's exercise of rulemaking, ad-

judication, awarding of contracts or grants, or decisions involving health, safety or foreign affairs. Appellants have canvassed the deliberative process cases and contend they all appear to fit into one of these four rather amorphous categories. The drafting of the "Ranchhand" report, they argue, does not fit squarely in any of these categories. Thus, appellants argue that the draft is not protected by the privilege. But there is nothing in the case law or legislative history that indicates the privilege is so limited, and appellants fail to give a reason why it should be so confined.

3. This result is consistent with Judge Wald's recent opinion in *Arthur Anderson & Co. v. Internal Revenue Service*, 679 F.2d 254 (D.C. Cir.1982), wherein this Court holds a preliminary draft of an IRS revenue ruling to be within the scope of Exemption (b)(5).