**Jack B. PFEIFFER, Plaintiff,**

v.

**CENTRAL INTELLIGENCE AGENCY, Defendant.**

**Civ. A. No. 87–1270.**

United States District Court, District of Columbia.

Sept. 13, 1989.

Lynne Bernabei, Bernabei & Katz, Washington, D.C., for plaintiff.

Judry Subar, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Plaintiff Jack B. Pfeiffer, a former employee of the Central Intelligence Agency (CIA or agency), brings this action under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* (1982) (FOIA), seeking the release from defendant CIA a document entitled "CIA's Internal Investigation of the Bay of Pigs Operation" (Internal Investigation Report), which he authored as an Agency employee.[1] Plaintiff also seeks disclosure of a small amount of information redacted from a second document, which he also authored, entitled "The Taylor Committee Investigation into the Bay of Pigs" (Taylor Report).[2] The government has withheld this material as exempt from disclosure under Exemptions 1, 3 and 5 of FOIA. 5 U.S.C. §§ 552(b)(1), (3) and (5). Presently before the Court are defendant's Motion for Summary Judgment and plaintiff's Cross–Motion for Partial Summary Judgment. For the reasons that follow, we grant defendant's motion for summary judgment.

## BACKGROUND

Plaintiff Jack Pfeiffer is an historian, who worked for the Central Intelligence Agency (CIA or Agency) from 1955 until he retired in March of 1984. From 1974–1984, he served as a Staff Historian, except for the period from January 1980 through December 1980, when he worked in the CIA's Classification Review Division. While employed at the Agency, he was assigned to work on the official history of the Bay of Pigs Invasion. By 1979, Pfeiffer had completed three classified volumes of the multivolume official history.[3] Pfeiffer then began work on a fourth volume, based on the Taylor Committee investigation and the CIA Inspector General's investigation of the Bay of Pigs Operation, which he hoped eventually would be suitable for declassification. In preparing the fourth volume of the series, plaintiff submitted the Internal Investigation Report draft to his superior, Chief Historian J. Kenneth McDonald, for editorial review in 1981. According to defendant, the draft was rejected as inadequate, and plaintiff was instructed to make substantial revisions to meet the requirements of the Agency; plaintiff was still in the process of making those revisions when he retired in 1984.

Shortly before his retirement, plaintiff submitted a purportedly "unclassified" version of the Internal Investigation Report to the CIA's Publication Review Board (Board) for prepublication review. According to defendant, however, plaintiff had no authority to declassify the document and it remains classified at the present time. In plaintiff's view, he personally had the authority to declassify material, and the Internal Investigation Report that he submitted to the Board was the final, official, unclassified history. In any event, the Board informed plaintiff that because the manuscript was a CIA document, not his personal property, his request for review was inappropriate. After several unsuccessful attempts to persuade the CIA to

---

1. It may aid in the understanding of this dispute to point out that the Internal Investigation Report, which plaintiff authored, purportedly defends the conduct of the CIA officers who planned the Bay of Pigs operation. The Internal Investigation Report relies heavily on a classified internal report entitled "Survey of the Cuban Operation," which was prepared by the CIA's Office of the Inspector General in 1961. It purportedly gives uncritical treatment to a report written by the Deputy Director of Plans in response to the Inspector General's Report.

2. The parties entered into a stipulation whereby defendant released a redacted version of the Taylor Report to plaintiff. Defendant released additional material at the time it lodged the Taylor Report with the Court in support of its Motion for Summary Judgment.

3. Plaintiff does not seek disclosure of these three classified volumes.

declassify the report through official channels, plaintiff sought to obtain it under FOIA.

The Taylor Report was written and edited by plaintiff in an identical manner to the Internal Investigation Report. The Agency has released, with a small number of redactions, the Taylor Report. The Agency claims that the redacted portions of the Taylor Report were properly withheld under Exemptions 1 and 3 of FOIA. 5 U.S.C. §§ 552(b)(1) and (b)(3).

## DISCUSSION

Defendant has moved for summary judgment, asserting that there are no genuine issues of material fact and that the court should award judgment as a matter of law. Fed.R.Civ.P. 56(b). Plaintiff opposes summary judgment and cross-moves for partial summary judgment with respect to the redactions to the Taylor Committee Report. In considering the exemptions claimed by defendant, we keep in mind both the disclosure purpose of FOIA and the defendant's burden of demonstrating entitlement to an exemption. 5 U.S.C. § 552(a)(4)(B).

### A. *Internal Investigation Report*

Defendant argues that the Internal Investigation Report is protected in its entirety from disclosure by the "deliberative process" privilege of Exemption 5 of FOIA, 5 U.S.C. § 552(b)(5). It is defendant's position that the Internal Investigation Report was properly withheld because its release would reveal the deliberative process involved in the creation of the CIA's official history of the Bay of Pigs.

Defendant puts forth two grounds as to why Exemption 5 applies to the Internal Investigation Report. First, defendant contends that the Internal Investigation Report is a preliminary draft of an unfinished official agency history, the release of which would damage the Agency's deliberative process by exposing editorial decisions to the chilling effect of public scrutiny. Second, defendant asserts that release of the report would be tantamount to release of a privileged CIA Inspector General's report and intra–Agency response

thereto, upon which the Internal Investigation Report is based.

■ There is no dispute between the parties that a preliminary draft of an unfinished agency history is protected from disclosure in its entirety under the deliberative process privilege of Exemption 5. *Dudman Communications Corp. v. Department of the Air Force*, 815 F.2d 1565 (D.C.Cir.1987); *Russell v. Department of the Air Force*, 682 F.2d 1045 (D.C.Cir. 1982); Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Plaintiff's Memo.) at 14. Plaintiff, however, asserts that a factual issue exists as to whether the Internal Investigation Report should be characterized as a pre-decisional manuscript that represents the personal opinions of its author or as a "final" agency history that represents the official position of the CIA. *See* Plaintiff's Memo. at 16–17.

Summary judgment is appropriate where there are no "substantial and material" factual issues left to be resolved. *McGehee v. CIA*, 697 F.2d 1095, 1101 (D.C.Cir. 1983) (quoting *Founding Church of Scientology v. National Security Agency*, 610 F.2d 824, 836 (D.C.Cir.1979)). Plaintiff may not rest on bare allegations, but must come forward with specific facts of sufficiently probative value to allow a reasonable trier of fact to render a verdict in plaintiff's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986); Fed. R.Civ.P. 56(e). Where, as here, the evidence, taken as a whole, can reasonably lead to only one conclusion under the governing law, defendant is entitled to summary judgment. *Id.; Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

■ The relevant factors to consider in determining whether a document is a pre-decisional draft or a final, official agency position include: 1) the decision-making authority, or lack thereof, of the document's author; 2) the position of the parties to the document in the chain of command; and 3) whether the document is intended as an

expression of the individual author's views or as an expression of the agency's official position. *See, e.g., Authur Andersen & Co. v. IRS,* 679 F.2d 254, 257–59 (D.C.Cir. 1982). In weighing these factors, we must give considerable deference to the agency's explanation of its decisional process, due to the agency's expertise in determining "what confidentiality is needed 'to prevent injury to the quality of agency decisions,' while the decisionmaking process is in progress. *Chemical Mfg. Ass'n v. Consumer Product Safety Comm'n,* 600 F.Supp. 114, 118 (D.D.C.1984) (quoting *NLRB v. Sears Roebuck & Co.,* 421 U.S. 132, 151, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1974)).

█ Plaintiff states that he completed a classified version of the Internal Investigation Report in 1984. Plaintiff states that he subsequently revised the classified version by deleting the names and descriptions of witnesses in the Bay of Pigs Operation, as well as deleting, what were in his view, sensitive sources and methods of the investigation. Plaintiff personally marked the revised Internal Investigation Report as "UNCLASSIFIED"[4] and submitted it to his supervisor, the Director of the Center for the Study of Intelligence. It is this, purportedly unclassified, version of the Internal Investigation Report that plaintiff seeks to be disclosed under FOIA. Plaintiff contends that the Report was complete and final at the time he submitted it to his supervisor. Declaration of Jack B. Pfeiffer (Pfeiffer Decl.) at ¶ 11.

We are unpersuaded that the Internal Investigation Report that plaintiff seeks to have disclosed is a "final" agency history, nor are we convinced that plaintiff had authority to unclassify the material. The subjective views of a staff member that the decision-making process is complete and "final" when he submits his recommenda-

tion to a superior is of no consequence. *See Renegotiation Bd. v. Grumman Aircraft Eng'r Corp.,* 421 U.S. 168, 175, 95 S.Ct. 1491, 1495, 44 L.Ed.2d 57 (1975). What matters is that the person who issues the document has authority to speak finally and officially for the agency. *Id.* at 175, 184, 95 S.Ct. at 1495, 1500; *see also Bureau of National Affairs, Inc. v. Department of Justice,* 742 F.2d 1484, 1497 (D.C. Cir.1984).

Plaintiff states that his authority to create an unclassified official history stemmed from a 1973 Headquarter Notice and a 1983 Settlement Agreement between the Agency and Plaintiff. In Headquarter Notice HN 1–97, dated August 8, 1973, the Director of Central Intelligence William Colby related that one of the major objectives of the CIA History Staff was to "develop accurate accounts of certain of the CIA's past activities in terms suitable for inclusion in Government–wide historical and declassification programs, while protecting intelligence sources and methods." HN 1–97, entitled "CIA History Program." McDonald Supp. Decl. Attachment 1 at ¶ 1. On its face, this directive does not authorize staff Historians to speak finally for the Agency, nor does it commit the CIA to accept or publish any particular piece of work. The directive expressly states that "histories will be under the control of the Deputy Director concerned, provided that release to the public will be subject to the approval of the Director." *Id.* at ¶ 3. Plaintiff cannot seriously contend that it was the policy of the Agency, under this directive, to accept automatically a staff historian's manuscript as an official history as soon as the historian finished what he deemed to be the "final" draft.

Furthermore, the evidence establishes that HN 1–97 was no longer even in effect in 1984 when plaintiff submitted his "unclassified" Internal Investigation Report to

---

**4.** The authority necessary to declassify a CIA document is set forth in § 3.1(b) of Executive Order 12,356, 47 Fed.Reg. 14,878 (1982). Plaintiff did not serve in any of the positions empowered with declassification authority at the time he purportedly "unclassified" the Internal Investigation Report. Plaintiff has failed to demonstrate how he could possibly be exempt from

these regulations. Furthermore, plaintiff's denomination of the Report as "unclassified" by itself is of no legal significance. *Goldberg v. Department of State,* 818 F.2d 71, 79–80 (D.C. Cir.1987). This is because, whether or not the material is unclassified, does not affect its status as a predecisional draft, rather a final agency position.

his superior. Through a series of directives issued after HN 1–97,[5] the historical review process was re-organized. Pursuant to HN 1–193, issued on December 2, 1982 and in effect at the time plaintiff presented his Internal Investigation Report to his supervisor in 1984, the History Advisory Board [6] was expressly responsible "for reviewing and deciding upon circulation of histories as they are completed." HN 1–193 McDonald Supp. Decl. Attachment 1. Plaintiff does not allege that the version of the Internal Investigation Report he seeks to obtain was ever approved by anyone other than himself. Pfeiffer Decl. at ¶ 11. Nor does he allege that the CIA made any internal use of the Report as if it were an official history. On the contrary, the uncontroverted evidence establishes that plaintiff's work was twice reviewed by the CIA's Chief Historian and rejected as inadequate for the Agency's needs. *See* McDonald Decl. at ¶¶ 6, 13–15.

The 1983 Settlement Agreement, which according to plaintiff rescued plaintiff from a "forced" retirement in 1982 and permitted him to remain as a full staff employee until 1984, similarly fails to confer upon plaintiff any authority to speak for the Agency as to when a history is official and final. Nowhere does this agreement expressly or implicitly authorize plaintiff to speak finally for the CIA or promulgate an official Agency history without the requisite editorial and administrative review. *See* Agreement Between Dr. Jack B. Pfeiffer and the Central Intelligence Agency, Defendant's Exhibit K. To the contrary, the Agreement explicitly states that "[u]ntil the effective date of his resignation, Dr. Pfeiffer agrees that he will be subject to Agency regulations and discipline like any other employee of the Agency." *Id.* at ¶ 1. It is simply impossible to construe this Agreement as conferring upon plaintiff any more final decision-making authority than he had before entering into the Agreement.

We find that the Internal Investigation Report that plaintiff seeks to have disclosed is a preliminary draft of an unfinished agency history, which, as of yet, represents merely the view of one staff historian and not the official view of the Agency. We conclude that the Agency has met its burden of demonstrating that disclosure of the material sought by plaintiff would reveal the Agency's deliberative process and that Exemption 5 of FOIA prevents mandatory disclosure of the Internal Investigation Report. *See Russell v. Department of the Air Force*, 682 F.2d 1045, 1048–49 (D.C.Cir.1982).

Because we find that the Internal Investigation Report is exempt from disclosure under the deliberative process exemption of 5 U.S.C. § 552(b)(5), it is not necessary to reach defendant's additional claim that the material is exempt because it repeats conclusions, recommendations and factual information obtained from confidential sources in a privileged CIA Inspector General's report and the intra-agency response thereto. This additional basis for nondisclosure under Exemption 5 may very well also apply to the Internal Investigation Report requested by plaintiff.

### B. *The Taylor Report*

Defendant argues that the material redacted from the Taylor Report is properly withheld under Exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3), as "material specifically exempted from disclosure by statute." Defendant has invoked two statutes to justify the redactions. The first is § 7 of the Central Intelligence Agency Act of 1949, 50 U.S.C. § 403g [7]; the second is § 102(d)(3) of

---

5. *See* HN 1–165 (Nov. 21, 1980) McDonald Supp. Decl. Attachment 3; HN 1–187 (Jan. 1, 1982) McDonald Supp. Decl. Attachment 4; HN 1–193 (Dec. 2, 1982) McDonald Supp. Decl. Attachment 1; *see also* McDonald Supp. Decl. at ¶¶ 6, 11, 19 & 22.

6. The History Advisory Board is composed of the Director, his four Deputy Directors and the Chief Historian.

7. The statute provides that: the Agency shall be exempted from ... the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries or numbers of personnel employed by the Agency.

**342**

the National Security Act of 1947, 50 U.S.C. § 403(d)(3).[8] Plaintiff concedes, as he must, that each of these statutes qualifies as a withholding statute under Exemption 3. *Halperin v. CIA*, 629 F.2d 144, 147 (D.C.Cir.1980); *Goland v. CIA*, 607 F.2d 339, 350 (D.C.Cir.1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *CIA v. Simms*, 471 U.S. 159, 167, 105 S.Ct. 1881, 1886, 85 L.Ed.2d 173 (1985); Plaintiff's Memo. at 24. Plaintiff, however, maintains that CIA's prior public disclosure of the redacted information renders the information beyond the coverage of the statutes.

■ In asserting a claim of prior public disclosure, a plaintiff "must bear the initial burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Afshar v. Department of State*, 702 F.2d 1125, 1130 (D.C.Cir.1983). Plaintiff cannot merely point to information that happens to find its way into a published account; rather there must be an "official acknowledgement by an authoritative source." *Id.* Unofficial statements or memoirs by purported former CIA employees do not constitute official disclosures. *Id.* 1130–34. And "CIA clearance of books, and articles, books written by former CIA officials, and general discussions in Congressional publications do *not* constitute official disclosures." *Schlesinger v. CIA*, 591 F.Supp. 60, 66 (D.D.C.1984) (citing *Afshar*, 702 F.2d at 1130–34; *Military Audit Project v. Casey*, 656 F.2d 724, 742–45 (D.C.Cir.1981)).

■ Plaintiff directs the Court's attention to excerpts from several books, magazine articles and interviews purporting to demonstrate that some of the information withheld by the Agency is part of the public record. This may well be true but is of no legal significance.

This is because plaintiff has failed to meet his burden of establishing that any of his proffered evidence represents an *official* CIA disclosure, dissemination or acknowledgement. Because plaintiff has offered no probative evidence in support of his claim of prior disclosure, and because he raises no other objection to the CIA's invocation of Exemption 3, defendant is entitled to judgment as a matter of law.

Because the information redacted from the Taylor Report is protected under Exemption 3, it is unnecessary for us to address defendant's additional claim that the redacted material is properly withheld under Exemption 1, although this basis for withholding the material may have merit as well.

## CONCLUSION

The CIA is entitled to summary judgment as a matter of law because there are no genuine issues of material fact in dispute. Exemptions 5 and 3 of FOIA, 5 U.S.C. §§ 552(b)(5) and (b)(3) provide a solid basis for the withholding of the information requested by plaintiff.

An order consistent with the foregoing has been entered this day.

## ORDER

Upon consideration of defendant's Motion for Summary Judgment, plaintiff's opposition thereto, plaintiff's Cross–Motion for Partial Summary Judgment and the entire record herein, and for the reasons set forth in the accompanying Memorandum Opinion, it is by the Court this 12th day of September, 1989

ORDERED that defendant's motion for summary judgment be and hereby is granted; and it is

FURTHER ORDERED that plaintiff's motion for partial summary judgment be and hereby is denied.

---

**8.** This statute provides that "the Director of Central Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure."