**Charles R. HANSEN, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF the AIR FORCE, Defendant.**

**Civ. A. No. 91–0099–LFO.**

United States District Court,
District of Columbia.

April 13, 1992.

Martin D. Schneiderman, John A. Flyger, Steptoe & Johnson, Elliot M. Mincberg, Legal Director, People for the American Way, Washington, DC, for plaintiff.

Sally M. Rider, Asst. U.S. Atty., Washington, DC, for defendant.

MEMORANDUM

OBERDORFER, District Judge.

This matter is before the Court on Cross–Motions for Summary Judgment. Plaintiff Charles Hansen filed a Freedom of Information Act ("FOIA") 5 U.S.C. § 552 to compel the release of portions of several unpublished volumes of an internal History of the United States Air Force's ("Air Force") history of the early post-war atomic energy program, entitled "A History of the Air Force Atomic Energy Program, 1943–1953." In 1981, the Air Force released to plaintiff approximately 968 previously unclassified pages of the draft, it now seeks to withhold the remainder of the document pursuant to FOIA exemptions (b)(5) and (b)(1). A hearing was held on these Motions on February 5, 1992 and can now be decided.

I.

Plaintiff Hansen states that he requested the Air Force History for use in preparing a historical study for an updated version of his book *U.S. Nuclear Weapons: The Secret History* ("History"). *See* Plaintiff's Counter-Statement of Material Facts ("Plaintiff's Facts"), Hansen Aff. ¶ 1. The subsequent portion of this book will focus on the history of the Air Force's nuclear weapons programs during the post-World War II era. *Id.* ¶¶ 1–2. The History has been listed as a reference work since 1977 in the "United States Air Force History: A Guide to Monographic Literature 1943–1974" (Office of Air Force History, 1977), *Id.* Ex. 16, and again in the "Guide to Air Force Historical Literature 1943–1983" (Office of Air Force History, 1985). *Id.* Ex. 2. Defendant admits that the History has not been revised during the last 30 years. *Id.* Hansen Aff. ¶ 15; Defendant's Argument, Summary Judgment Hearing, February 5, 1992. Moreover, the History has been made available to non-government researchers and has been released to the public. *Id.* Hansen Aff. ¶¶ 18–20.

On December 7, 1980 Hansen first submitted a FOIA request to the Air Force for Volumes II through IV of the History. *Id.* Ex. 3. In response, Hansen received a letter, dated January 28, 1981, from William C. Heimdahl, then Chief of the Reference Services Branch of the Air Force's Office of Air Force History, informing the plaintiff that Volume II, parts 1 and 2 and Volume IV, part 1 would be released to him, at cost, with deletion of some segregable portions attributable to national security under exemption 1 of the FOIA. *Id.* Ex. 4.

Hansen was informed that Volume II, parts 1 and 2 and Volume IV, part 2 had not yet been "reviewed for disclosure" but that if Hansen maintained his interest in purchasing the reproductions, the Air Force would initiate a security review of those volumes. *Id.* Hansen complied with this request and on July 9, 1981 added a request for Volume V. *Id.* Exs. 5, 7. Hansen received Volumes II, parts 1 and 2 and Volume IV, part 1 in December 1981, *id.* Hansen Aff. ¶ 7, but received no response with respect to his other requests. *Id.* Hansen Aff. ¶¶ 7–8.

Throughout the seven intervening years Hansen states that he wrote and called the Air Force to inquire as to its progress in reviewing the remaining volumes and was told that the security review was in progress. *Id.* Hansen Aff. ¶ 9. On April 6, 1988, Hansen submitted an appeal of the Air Force's failure to release the remaining portions of the History. *Id.* Hansen Aff. ¶ 10. In response, Hansen received a letter stating that the Air Force was in the final stages of review and that pending that review the "Office of Air Force History will finalize release/sanitization of those items." *Id.* Ex. 10. On February 6, 1990, the Air Force responded that the unreleased portions of the History were exempt from disclosure under Exemption 5 as "draft historical manuscripts" and under Exemption 1 "because of the classification of many of the sources upon which most sections of the narrative are based." *Id.* Ex. 12. Following this reply, Hansen filed an administrative appeal with the Secretary of the Air Force. *Id.* Ex. 13. The Air Force denied Hansen's appeal by a letter of May 17, 1990 and noted that the 1981 release of portions of the History had been an "error." *Id.* Ex. 14. Hansen then filed the present action.

## II.

The Air Force is withholding the History under two exemptions of the FOIA: (b)(5) and (b)(1). First, Exemption 5 specifically allows an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Defendant argues that such language incorporates all material protected by the civil discovery rules, *see Martin v. Office of Special Counsel,* 819 F.2d 1181, 1185 (D.C.Cir.1987), including materials related to the deliberative process. *See Dudman Communications v. Department of the Air Force,* 815 F.2d 1565, 1567 (D.C.Cir.1987). Citing *Dudman,* defendant contends that the privilege protecting the "deliberative decisionmaking processes of the executive branch ... rests fundamentally on the belief that were agencies forced to 'operate in a fishbowl,' [citation omitted], the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *Id.*

Further, defendant correctly points out that draft documents have been determined by the courts to fall under the deliberative process privilege. *See, e.g., Arthur Andersen & Co. v. IRS,* 679 F.2d 254, 256 (D.C.Cir. 1982); *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 866 (D.C.Cir. 1980). Defendant goes on, however, to argue that *Russell v. Department of the Air Force,* 682 F.2d 1045 (D.C.Cir.1982), and *Dudman Communications v. Department of the Air Force,* are indistinguishable from the instant matter and, as a result, disclosure of the History sought by Hansen would disclose the deliberative process of the Air Force and "stifle the creative thinking and candid exchange of ideas necessary to produce good historical work." *Dudman* 815 F.2d at 1569.

The analogy to *Russell* and *Dudman* must fail. In *Russell,* the Air Force had submitted and disclosed a final manuscript of an interpretive history about the use of Agent Orange and other herbicides in the Vietnam War. The appellants sought portions of a preliminary draft of that history containing

an additional twenty pages that had not been included in the final manuscript. The *Russell* court found the additional pages of the draft manuscript protected under Exemption 5 and the "deliberative process" since the court's *in camera* examination of the twenty additional pages confirmed "that a simple comparison between the pages sought and the official document would reveal what material supplied by subordinates senior officials judged appropriate for the history and what material they judged inappropriate." The court reasoned that "Exemption (b)(5) exists to prevent such disrobing of an agency decision-maker's judgment." *Id.* at 1049; *see also Lead Industries Ass'n v. Occupational Safety and Health Admin.*, 610 F.2d 70, 85–6 (2d Cir.1979). Therefore, the *Russell* court prevented release of those portions of the manuscript that could be identified as discarded draft portions of a finished manuscript. Here, the entire manuscript of the History has remained virtually unchanged for 30 years and has been listed and treated as a finished manuscript by the Air Force. There is no reason to believe that releasing those portions of the History not subject to other Exemptions would "disrobe" an agency decision-maker's judgment.

Similarly, in *Dudman* the appellant requested a draft manuscript of a history of the Air Force in South Vietnam between 1961 and 1964. Importantly, Dudman was requesting the original "Sunderland manuscript," a working draft used by the Air Force to revise and rework the information into the single publishable product that was, indeed, released after having been subject to many levels of editorial review. The court applied the *Russell* rationale reasoning that "[R]elease of Sunderland's manuscript would disclose the alterations that the Air Force ... made during the process of compiling the official history." 815 F.2d at 1569. Accordingly, the court ruled that the "Sunderland manuscript" fell within Exemption 5 of the FOIA. *Id.* Again, the *Dudman* case is also distinguishable from plaintiff Hansen's request. In *Dudman*, if the draft manuscript had been released, two distinct works could have been compared and contrasted in order to determine the Air Force's deliberative process. Here, however, there exists only

one manuscript that has been left unchanged for approximately 30 years. As a result, there is no likelihood of the "chilling effect" of disclosure of the editorial process.

█ In summary, in the instant case, the History has been listed as a reference work since 1977, defendant admits that the History has not been revised during the last 30 years and the History has been made available to non-government researchers and has been released to the public. Further, there exists only one version of the History that has been used as a finished product; there is no possibility of comparisons with previous versions. Therefore, although, the Air Force has not formally published the History, in every other way it has consistently treated the document as a finished manuscript. Given these circumstances, this History cannot be termed a "draft document" nor is it qualified to receive a FOIA Exemption to protect the ongoing "deliberative process" of editorial review.

### III.

█ The Air Force also argues that portions of the History are being withheld under Exemption 1 for reasons of National Security. Exemption 1 protects from disclosure those issues that are

> (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive Order.

5 U.S.C. § 552(b)(1). Defendant has submitted the Heimdahl Affidavit to establish that portions of the draft manuscript, sought by the plaintiff, are properly and currently classified. *See* Defendant's Statement of Genuine Issues, Declaration of William Heimdahl. Further, as the defendant correctly notes, courts must give such affidavits "substantial weight" since courts "lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case." *Halperin v. CIA*, 629 F.2d 144, 148 (D.C.Cir. 1980); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981). Therefore, the plaintiff's Motion on Exemption 1 must be

denied without prejudice to its reintroduction following the Air Force's reevaluation of the History.

### IV.

Accordingly, an accompanying Order will grant plaintiff's Motion on Exemption 5, deny plaintiff's Motion on Exemption 1 without prejudice and deny defendant's Motion for Summary Judgment. The Order will further direct the government to follow its proposed course of action to "continue with the declassification review to determine which portions of the draft, if any, may be declassified and released to plaintiff." Defendant's Motion for Summary Judgment at 5.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this 13th day of April, 1991, hereby

ORDERED: that plaintiff's Motion on Exemption 5 should be and is hereby GRANTED; and it is further

ORDERED: that plaintiff's Motion on Exemption 1 should be and is hereby DENIED without prejudice; and it is further

ORDERED: that Defendant's Motion for Summary Judgment should be and is hereby, DENIED; and it is further

ORDERED: that defendants are DIRECTED to follow their proposed course of action and continue the declassification review of the History and release those portions of the text that do not fall under Exemption 1.