CHEMICAL WEAPONS WORKING
GROUP, et al., Plaintiffs,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,
Defendant.

No. Misc. A. 98–156(AER).

United States District Court,
District of Columbia.

Jan. 19, 1999.

Richard E. Condit, Washington, DC, for plaintiffs.

Robert Foster, U.S. Department of Justice, Environment & Natural Resources Division, Denver, CO, for defendant.

### MEMORANDUM OPINION

AUBREY E. ROBINSON, Jr., District Judge.

Presently before the Court is Plaintiffs' motion to compel production of documents. Upon consideration of the entire record, and for the reasons stated below, the Court will deny the motion.[1]

### Background

Plaintiffs have subpoenaed documents which represent drafts of EPA's revisions to its 1994 Review Draft of the Dioxin Reassessment.[2] The Dioxin Reassessment represents EPA's best effort to analyze and syn-

---

1. The Court finds that the affidavits submitted by Defendant are adequate to establish the privilege, making an *in camera* examination of the documents unnecessary. *See EPA v. Mink*, 410 U.S. 73, 93, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973).

2. The subpoena requested all final versions as well, but the agency states that there are no final versions. Decl. of William H. Farland at 4.

thesize the available scientific data to provide to EPA policy makers and program officials an assessment of the risk to human health and the environment of dioxins.

The current reassessment began in 1991. A "Review Draft" was published in 1994 for public comment and peer review by the Science Advisory Board (SAB). As a result of the public comment and the SAB's recommendations, the agency is currently in the process of the revising the Review Draft to take account of the public comment and latest science. In addition, portions of the Review Draft are undergoing more extensive revision and will be submitted to additional peer review.[3] For at least one major component of the Review Draft, the additional peer review has been completed, and the agency is now revising the draft to address the issues raised by the review.

Plaintiffs seek all of the draft revisions to the Review Draft which have not been publicly released. Defendant, the United States Environmental Protection Agency (EPA), has resisted production and asserted the deliberative process privilege.[4]

*Analysis*

■ To be protected by the deliberative process privilege a document must be both "predecisional" and "deliberative." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980). There is no contention here that the draft revisions to the Dioxin Reassessment are not predecisional. The entire purpose of the revision process is to create a final Reassessment document which the agency can use in carrying out its statutory mandates. Plaintiffs appear to contend, however, that the documents are not sufficiently "deliberative" to qualify for the privilege.

■ The deliberative process privilege protects "all communications which, if revealed, would expose to public view the deliberative process of an agency." *Russell v. Department of the Air Force*, 682 F.2d 1045, 1049 (D.C.Cir.1982). Thus, factual materials are frequently ineligible for the privilege. *See EPA v. Mink*, 410 U.S. 73, 87–88, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *Russell*, 682 F.2d at 1048. Plaintiffs seize on this notion to argue that the draft revisions to the Dioxin Reassessment are not privileged because they "are summaries of scientific facts, observations, and studies and scientific analysis of those facts. While scientific inferences and conclusions are drawn in the documents ... these inferences are still scientific and factual rather than policy recommendations." Pls.'s Mem. in Support of Motion to Compel at 3.

The Court notes that it is not at all clear that the information Plaintiffs seek is "factual." *See Quarles v. Department of the Navy*, 893 F.2d 390, 392–93 (D.C.Cir.1990) (cost estimates for homeporting battleships opinion not fact). Like any health risk assessment, the Dioxin Reassessment "involves evaluating scientific studies, deciding what weight to give their results, making scientific judgments regarding data gaps, and applying science policy to put the whole into a meaningful framework." Decl. of William H. Farland at 11–12. The result of this process, the "inferences and conclusions," may be scientific, but they are not purely factual. Although risk estimates, like cost estimates, often "have a surface precision that may lead the unsophisticated to think of them as fixed ... estimates such as these are far from fixed ....." *Id.* at 393. Rather, "[t]hey derive from a complex set of judgments ... They partake of just that elasticity that has persuaded courts to provide shelter for opinions generally." *Id.*

■ While much of the information sought by Plaintiffs may not be "factual," the ultimate question in deciding whether the deliberative process privilege applies is not whether the material is "factual" or not.

---

3. As portions of the review draft are submitted for independent peer review, the agency releases those drafts to the public. Decl. of William H. Farland at 8–9.

4. The Court notes that Plaintiffs object to EPA's privilege log. The Court finds that EPA reason-

ably interpreted Plaintiffs' subpoena under the circumstances. Furthermore, EPA provided sufficient information to enable Plaintiffs and the Court to assess the applicability of the privilege as to all documents. Fed.R.Civ.P. 45(d)(2).

Courts have found the privilege applicable to information which is heavily factual. *See Russell*, 682 F.2d at 1049 (privilege protects twenty pages of Air Force history not included in final draft); *Montrose Chemical Corp. v. Train*, 491 F.2d 63, 71 (D.C.Cir.1974) (privilege protects agency summaries of facts in public hearing record).

Instead, the critical question is whether "disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Dudman Communications v. Department of the Air Force*, 815 F.2d 1565, 1568 (D.C.Cir. 1987).

■ In deciding whether the deliberative process privilege applies, courts consider the facts of the case in light of the policies behind the privilege. *Wolfe v. Department of Health and Human Servs.*, 839 F.2d 768, 774 (D.C.Cir.1988).

> There are essentially three policy bases for this privilege. First, it protects creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy. Second, it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had already been settled upon. And third, it protects the integrity of the decision-making process itself by confirming that "officials should be judged by what they decided(,) not for matters they considered before making up their own minds."

*Russell*, 682 F.2d at 1048 (quoting *Jordan v. United States Department of Justice*, 591 F.2d 753, 772–73 (D.C.Cir.1978)). The Court finds that all three of these policies justify the application of this privilege to the documents sought by Plaintiffs.

■ First, the Court finds creditable the agency's assertion that the release of draft information would be likely to chill the free exchange of ideas within the agency. *See* Decl. of William H. Farland at 12; *Coastal States*, 617 F.2d at 866 (privilege applies if "public disclosure is likely in the future to stifle honest and frank communication within the agency").

■ Risk assessments, and in particular the Dioxin Reassessment, may be very controversial. Thus, EPA has "much at stake in the [final product], and documents like it, being the product of 'candid debate and creative consideration of the alternatives' " within the agency. *Russell*, 682 F.2d at 1048. Just as the Air Force in *Russell* was entitled to protect the work of individual authors in order to encourage them "to provide the best, most honest, and scholarly products they are capable of producing[,]" so the EPA is entitled to protect the draft work of its individual authors. If anything, the case for protection is even stronger here than it was in *Russell*, because the agency has not completed its revisions. Thus, as EPA points out, any release of draft information might have the unfortunate effect of encouraging interested parties to pressure the agency to change its position even before the agency has adopted one.

Likewise, the Court finds highly creditable the agency's assertion that release of draft information could mislead the public. Decl. of William H. Farland at 12–13. "[T]he public may misinterpret information in the drafts as the most up-to-date information on dioxin toxicity available from the Agency, even though the documents do not reflect official EPA views, but only the preliminary views of the primary authors." *Id.* at 13. In fact, it appears that Plaintiffs seek the documents precisely because they believe it is the latest EPA information on the health effect of dioxins. *See* Pls.'s Motion to Compel at 2–3. Again, the situation is very like the one in *Russell*, where the court said,

> [W]e recognize the tendency of the public to assume that a memorandum generated within an agency of the government reflects the position of the agency, regardless of whether the memorandum is designated as an "official" document. Therefore [the deliberative process privilege] acts in this case to prevent the public from misconstruing the views of an individual [agency official] to be the views of [the agency].

*Russell*, 682 F.2d at 1049.

Finally, the Court finds that disclosure of the draft material would "violate the integri-

**4**

ty of the decision-making process." *Id.* Release of draft revisions now would inevitably enable parties to learn which preliminary ideas and findings the Agency had accepted, which it had refined, and which it had rejected. "But such disclosures of the internal workings of the agency is exactly what the law forbids." *Id.* (quoting *Lead Indus., Ass'n v. OSHA,* 610 F.2d 70, 86 (2d Cir. 1979)).

### *Conclusion*

The Court finds that the documents sought by the Plaintiffs are protected by the deliberative process privilege. Release of the documents would likely stifle candid communication within the agency, lead to public confusion, and violate the integrity of the decision-making process. Accordingly, the Court will deny the motion to compel. An appropriate order issues this same day.